# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Mzia Bardzimashvili,<br><br>Plaintiff,<br><br>v.<br><br>Pelican Investment Holdings Group LLC a/k/a AAP, Gus Renny, Quest Software Inc. d/b/a Quest Towing Services Inc, Quest Claims Services, SING for Service, LLC d/b/a/ MEPCO, John/Jane Does 1-5,<br><br>Defendants. | §<br>§<br>§<br>§ Civil Action No. 1:21-cv-07213<br>§<br>§<br>§<br>§<br>§<br>§ |

## Plaintiff's Original Complaint and Jury Demand

### PARTIES

1. The plaintiff is Mzia Bardzimashvili, a natural person who was present in New York, Kings County, for all calls in this case.

2. Defendant Pelican Investment Holdings Group, LLC is a Florida corporation that operates under an assumed name of AAP.

3. AAP is owned and operated by Pelican Investment Holdings Group, LLC.

4. Pelican Investment Holdings Group, LLC can be served at its place of business at 1300 Old Congress Avenue, West Palm Beach, FL 33409.

5. Pelican Investment Holdings Group, LLC can also be served through its registered agent Scott J. Wortman at 12300 South Shore Blvd, Ste 202, Wellington, FL 33414.

6. Gus Renny is an officer and shareholder of APP and Pelican Investment Holdings Group, LLC.

7. Gus Renny can be served at 218 Edgewood Dr., West Palm Beach, FL 33405-1904.

8. Quest Software, Inc. d/b/a Quest Towing Services Inc. is a Michigan corporation that can be served 106 West Tolls Drive, St. Johns, MI 48879.

9. Quest Claims Services is a Michigan corporation that can be served at 106 West Tolls Drive, St. Johns, MI 48879.

10. SING for Service, LLC d/b/a MEPCO is an Illinois corporation that is headquartered and can be served at 10 S. Lasalle St., Ste 2310, Chicago, IL 60603.

11. Each defendant herein is a "person" as defined by *47 U.S.C. § 153 (39)*.

12. Upon information and belief, at all relevant times, each Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

13. Upon information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

14. John/Jane Does 1-5 are other liable parties currently unknown to Plaintiff who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the Does Defendants when such identities become known.

**JURISDICTION AND VENUE**

15. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal

statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

16. <u>Personal Jurisdiction</u>.  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to New York residents, and derive revenue from New York residents, and the sell goods and services to New York residents, including the plaintiff.

17.  <u>Venue</u>**.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at New York residents, including the plaintiff—occurred in this District and because the plaintiff resides in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

18. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. §227).

19. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

20. The TCPA makes it unlawful "to initiate any telephone call to any residential

telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §227(b)(1)(B).

21. The TCPA provides a private cause of action to persons who receive calls in violation of §227(b). 47 U.S.C. § 227(b)(3).

22. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. §227(c); 47 C.F.R. §64.1200(d)(1)[1].

23. The TCPA provides a private cause of action to persons who receive calls in violation of §227(c) or a regulation promulgated thereunder. 47 U.S.C. §227(c)(5).

24. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

25. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

26. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular,

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 ¶33 (2012) (footnote and internal quotation marks omitted).

27. FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

28. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party

telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

29. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-952 (9th Cir. 2009).

30. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g*., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

31. Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of all Defendants in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq*. ("TCPA") and related regulations, thereby invading Plaintiff's privacy and causing Plaintiff other damages enumerated below.

32. This case relates to unsolicited telemarketing calls to Plaintiff to buy an extended car warranty for the benefit of all the named defendants in this case.

**Calls to Plaintiff**

33. Upon information and belief, in the period from October 3, 2020 through August 30, 2021, Plaintiff received eighteen (18) calls from a variety of spoofed caller IDs that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of the named defendants. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The calls were to \*\*\*-\*\*\*-5582.

34. Upon information and belief, Defendants provide extended car warranty services to consumers.

35. Upon information and belief, to generate sales, Defendants utilized telemarketer services provided by other co-Defends herein.

36. Upon information and belief, the subject calls came from a variety of spoofed caller IDs, contained a pre-recorded message and were initiated using an "automated telephone dialing system" (hereinafter, the "ADTS") as defined by *47 U.S.C. § 227(a)(1)*.

37. Upon information and belief, the calls had a noticeable pause and delay before the pre-recorded message began indicating the calls were initiated using an ATDS. Those calls did not identify the caller.

38. Upon information and belief, Plaintiff had never consented to receiving automated calls or calls with pre-recorded messages from any of the defendants or their agents.

39. Upon information and belief, these calls were not related to any emergency purpose as defined by *47 U.S.C. § 227(b)(1)(A)*.

40. Upon information and belief, Plaintiff never sought information about an extended

warranty for a car and did not consent to the calls from any Defendants herein.

41. Upon information and belief, during all relevant times, Defendants did not possess Plaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

42. Plaintiff is not a customer of Defendants' services and has never provided any personal information, including his cellular telephone number, to Defendant for any purpose whatsoever. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on his cellular telephone pursuant to 47 U.S.C. § 227(b)(1)(A).

43. Upon information and belief, on or about June 25, 2021 Plaintiff engaged with telemarketers to learn their identity and was transferred to a live representative who sold Plaintiff a vehicle protection policy under Service Contract #CPF001767. The same day Plaintiff received an email containing a confirmation of and agreement for the Service Contract # CPF001767, and the names of Defendants indicating that the policy was for each of their benefit and on their behalf.

44. Upon information and belief, despite selling a Service Contract # CPF001767 to Plaintiff, and never obtaining a consent to contact Plaintiff with future calls unrelated to the Service Contract # CPF001767, Defendants continued contacting Plaintiff with new offerings to sell the same type of extended car warranty to Plaintiff on the same vehicle.

45. Upon information and belief, Defendants did not have an internal do not call policy, did not place Plaintiff on an internal do not call policy, in violation of 47 CFR

64.1200(d).

46. Upon information and belief, at all times relevant to the allegations set forth herein, Plaintiff's cell phone number \*\*\*-\*\*\*-5582 has been placed on the state and federal "Do Not Call" Registries. But despite that, the telemarketing calls were placed to Plaintiff by and on behalf all Defendants herein.

47. Upon information and belief, Plaintiff has limited data storage capacity on his cellular telephone. Incoming calls from the defendants consumed part of this capacity.

48. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

49. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

50. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

51. Plaintiff has been harmed, injured, and damages by the unwanted calls including, but not limited to:

    (1) reduced device storage space;

    (2) reduced data plan usage;

    (3) lost time tending to unwanted calls;

    (4) decreased cell phone battery life and usage as well as the need for more frequent re-charges of the battery;

    (5) decreased enjoyment and usage of Plaintiff's cell phone;

    (6) annoyance;

    (7) frustration, and

    (8) anger.

## Defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, John/Jane Does 1-5 Knowingly and Willfully Violated Telemarketing Regulations

52. Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5 knowingly violated the TCPA by initiating automated calls with pre-recorded messages to Plaintiff.

53. Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5 did not have a written do-not-call policy while making calls to Plaintiff.

54. Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5 did not train their agents engaged in telemarketing on the existence and use of any do-not-call list.

55. Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5's calls did not provide Plaintiff with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

### Plaintiff's cell phone is a residential number

56. Upon information and belief, the calls were made to Plaintiff's cellular phone \*\*\*-\*\*\*-5582 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phone at his residents and has not done so for at least 10 years. Thus, he primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal

name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

57. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

58. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent.

59. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

60. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

61. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (As Against All Defendants)

62. Plaintiff realleges and incorporates by reference each and every allegation set forth in

the preceding paragraphs.

63. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

    b    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

    c    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

64. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

65. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

66. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Mzia Bardzimashvili prays for judgment against Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional Does as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 21 calls.

E. An award of damages to Plaintiff as allowed by law under the TCPA;

F. An award of interest, costs and attorneys' fees to Plaintiff as allowed by law and equity;

G. Such further relief as the Court deems necessary, just, and proper.

Dated: Brooklyn, New York
December 31, 2021

Respectfully submitted,

_____
Galina Feldsherova (GF-7882)
KOPELEVICH & FELDSHEROVA, P.C.

Attorneys for Plaintiff
241 37th St., Ste B439
Brooklyn, NY 11232
718-332-0577