STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

Mzia Bardzimashvili,

Plaintiff

v.                                                        Civil Action No. 1:21-cv-07213

Pelican Investment Holdings Group LLC
a/k/a AAP, Gus Renny, Quest Software Inc.                 ANSWER TO COMPLAINT
d/b/a Quest Towing Services Inc, Quest                  AND AFFIRMATIVE DEFENSES
Claims Services, SING for Service, LLC d/b/a
MEPCO, John/Jane Does 1-5,

Defendants.

## DEFENDANT QUEST'S ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES Defendants Quest Software Incorporated, allegedly d/b/a Quest Towing Services, Inc., and Quest Claims Services, alleged to be a Michigan corporation ("Quest"), and for their Answer and Affirmative Defenses to the above Complaint, states:

### PARTIES

1.      The Plaintiff is Mzia Bardzimashvili, a natural person who was present in New York, Kings County, for all calls in this case.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

2.      Defendant Pelican Investment Holdings Group, LLC is a Florida corporation that operates under an assumed name of AAP.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

3.      AAP is owned and operated by Pelican Investment Holdings Group, LLC.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

4.      Pelican Investment Holdings Group, LLC can be served at its place of business at 1300 Old Congress Avenue, West Palm Beach, FL 33409.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

5.      Pelican Investment Holdings Group, LLC can also be served through its registered agent Scott J. Wortman at 12300 South Shore Blvd, Ste 202, Wellington, FL 33414.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

6.      Gus Renny is an officer and shareholder of APP and Pelican Investment HoldingsGroup, LLC.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

7.      Gus Renny can be served at 218 Edgewood Dr., West Palm Beach, FL 33405-1904.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

8.      Quest Software, Inc. d/b/a Quest Towing Services Inc. is a Michigan corporation that can be served 106 West Tolls Drive, St. Johns, MI 48879.

**Response:**      Admitted in part and denied in part.  Quest admits that Quest Software, Inc. is a corporation.  Quest denies that Quest Software, Inc. is a Michigan corporation, and denies that it is doing business as or currently has or uses an assumed name of Quest Towing Services as alleged.  Quest denies that it can be served at 106 West Tolls Drive, but admits that it can be served at 106 West Tolles Drive, St. Johns, MI  48879.

2

9.     Quest Claims Services is a Michigan corporation that can be served at 106 West Tolls Drive, St. Johns, MI 48879.

**Response:**     Denied as untrue.

l0.     SING for Service, LLC d/b/a MEPCO is an Illinois corporation that is headquartered and can be served at 10 S. Lasalle St., Ste 2310, Chicago, IL 60603.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

11.     Each defendant herein is a "person" as defined by *47 USC.§ 153 (39).*

**Response:**     This allegation of law is neither admitted nor denied based on lack of knowledge.

12.     Upon information and belief, at all relevant times, each Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants.

**Response:**     Denied as untrue.

13.     Upon information and belief, each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

**Response:**     Denied as untrue.

14.     John/Jane Does 1-5 are other liable parties currently unknown to Plaintiff who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a Doe is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and

capacities of the Does Defendants when such identities become known.

**Response:**    Neither admitted nor denied based on a lack of knowledge.

## JURISDICTION AND VENUE

15.    Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC,* 565 U.S. 368, 372 (2012).

**Response:**    Federal question subject matter jurisdiction is admitted.

16.    Personal Jurisdiction. This Court has general personal jurisdiction over the defendantbecause they have repeatedly placed calls to New York residents, and derive revenuefrom New York residents, and the sell goods and services to New York residents, including the plaintiff.

**Response:**    Quest denies the grounds alleged for personal jurisdiction against it as untrue, but does not otherwise dispute personal jurisdiction as to Defendant Quest Software, Inc., only.

17.    Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(l)-(2) because a substantial part of the events giving rise to the claims-the calls and sale ofgoods and services directed at New York residents, including the plaintiff - occurred in this District and because the plaintiff resides in this District.

**Response:**    Quest does not deny venue, but denies the grounds alleged for venue ("calls and sale of goods and services directed . . . [to] Plaintiff") as untrue.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991,
## 47 U.S.C. § 227

18.    In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. §227).

**Response:**    This legal allegation is neither admitted nor denied based on the lack of knowledge.

19.    The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. §227(b)(1)(A)(iii).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.

20.    The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. §227(b)(1)(B).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.

21.     The TCPA provides a private cause of action to persons who receive calls in violation of §227(b). 47 U.S.C. § 227(b)(3).

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.  Responding further, Quest denies making any calls at issue.

22.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. §227(c); 47 C.F.R. §64.1200(d)(1).

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

23.     The TCPA provides a private cause of action to persons who receive calls in violation of §227(c) or a regulation promulgated thereunder. 47 U.S.C. §227(c)(5).

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

24.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

25.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 18 FCC Red. 14014, 14115 ¶ 165 (2003).

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

26.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular,

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Red. 1830, 1844 ¶33 (2012) (footnote and internal quotation marks omitted).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.

27.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 10 FCC Red. 12391,

12397 ¶13 (1995).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.  Quest further denies, to the extent the alleged standard may be applicable, that it (or any Quest-related entity, whether joined or not) was a "party on whose behalf" any solicitation was made.

28.    The FCC confirmed this principle in 2013, when it explained that "a seller ... may beheld vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *in the Matter of the Joint Petition Filed by Dish Network, LLC,* 28FCC Red. 6574, 6574 ¶1 (2013).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.

29.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951-952 (9th Cir. 2009).

**Response:**    This legal allegation is neither admitted nor denied based on a lack of knowledge.

30.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., *Jackson Five Star Catering, Inc. v. Beason,* Case No.  I0- 10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415 - 16 (D. Md. 2011) ("If an individual acting on behalf of a

corporation could avoid individual liability, the TCPA would lose much of its force.").

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

## FACTUAL ALLEGATIONS

31.     Plaintiff brings this action seeking damages and any other available legal or equitable remedies resulting from the illegal actions of all Defendants in negligently, knowingly, and/or willfully contacting Plaintiff on Plaintiff's cellular telephone in violation of the Telephone Consumer Protection Act, *47. U.S.C. § 227 et seq.* ("TCPA") and related regulations, thereby invading Plaintiff's privacy and causing Plaintiff other damages enumerated below.

**Response:**     Plaintiff's characterization of her own claims are neither admitted nor denied based on a lack of knowledge.  Quest denies all liability, and denies any contact with the Plaintiff, including unlawful contact.

32.     This case relates to unsolicited telemarketing calls to Plaintiff to buy an extended car warranty for the benefit of all the named defendants in this case.

**Response:**     This legal allegation is neither admitted nor denied based on a lack of knowledge.

## Alleged Calls to Plaintiff

33.     Upon information and belief, in the period from October 3, 2020 through August 30, 2021, Plaintiff received eighteen (18) calls from a variety of spoofed caller IDs that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of the named defendants. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating

the calls were initiated using an ATDS. The calls were to ***-***-5582.

**Response:**  This allegation is neither admitted nor denied based on a lack of knowledge. Further, Quest denies making any calls to Plaintiff. Quest further denies directing or requesting any other Party to make calls to Plaintiff.

34.  Upon information and belief, Defendants provide extended car warranty services to consumers.

**Response:**  This allegation is neither admitted nor denied with respect to other Defendants based on a lack of knowledge. Responding further, Quest denies that it provides warranty services to consumers.

35.  Upon information and belief, to generate sales, Defendants utilized telemarketer services provided by other co-Defends herein.

**Response:**  Neither admitted nor denied based on a lack of knowledge. Responding further, Quest denies that it uses telemarketer services and denies that it uses telemarketer services provided by other Defendants herein.

36.  Upon information and belief, the subject calls came from a variety of spoofed caller IDs, contained a pre-recorded message and were initiated using an "automated telephone dialing system" (hereinafter, the "ADTS") as defined by *47 U.S.C. § 227(a)(1).*

**Response:**  Neither admitted nor denied based on a lack of knowledge. Responding further, Quest does not use any ADTS, and did not do so in this case. It did not direct any Defendant to do so on its behalf.

37.  Upon information and belief, the calls had a noticeable pause and delay before the pre-recorded message began indicating the calls were initiated using an ATDS. Those calls did not identify the caller.

**Response:**  Neither admitted nor denied based on a lack of knowledge.

38.     Upon information and belief, Plaintiff had never consented to receiving automated calls or calls with pre-recorded messages from any of the defendants or their agents.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

39.     Upon information and belief, these calls were not related to any emergency purpose asdefined by *47 U.S.C. § 227(b)(1)(A).*

**Response:**     Neither admitted nor denied based on a lack of knowledge.  Responding further, Quest did not make any alleged calls.

40.     Upon information and belief, Plaintiff never sought information about an extended warranty for a car and did not consent to the calls from any Defendants herein.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

41.     Upon information and belief, during all relevant times, Defendants did not possessPlaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on his cellular telephone pursuant to 47 U.S.C. §227(b)(1)(A).

**Response:**     Neither admitted nor denied based on a lack of knowledge.  Responding further, Quest did not place any such alleged calls to Plaintiff, did not direct any agent to do so, and no calls were made on Quest's behalf.

42.     Plaintiff is not a customer of Defendants' services and has never provided any personal information, including his cellular telephone number, to Defendant for any purpose whatsoever. Accordingly, Defendant never received Plaintiff's "prior express consent" to receive calls using ADTS or an artificial or prerecorded voice messages on

his cellular telephone pursuant to 47 U.S.C. § 227(b)(l)(A).

**Response:**      Neither admitted nor denied based on a lack of knowledge.

43.      Upon information and belief, on or about June 25, 2021 Plaintiff engaged with telemarketers to learn their identity and was transferred to a live representative who sold Plaintiff a vehicle protection policy under Service Contract #CPF00l767. The same day Plaintiff received an email containing a confirmation of and agreement forthe Service Contract # CPF001767, and the names of Defendants indicating that the policy was for each of their benefit and on their behalf.

**Response:**      The date in question is neither admitted nor denied based on lack of knowledge. Allegations concerning Plaintiff engaging with live telemarketers are neither admitted nor denied based on lack of knowledge.  Allegations concerning the service contract as alleged are neither admitted nor denied based on lack of knowledge.  Quest denies as untrue the allegation that it is named in the policy or that the policy was for its benefit or on its behalf.  Quest denies all liability.

44.      Upon information and belief, despite selling a Service Contract # CPF00l767 to Plaintiff, and never obtaining a consent to contact  Plaintiff  with  future calls unrelated to the Service Contract # CPF00l767, Defendants continued contacting Plaintiff withnew offerings to sell the same type of extended car warranty to Plaintiff on the same vehicle.

**Response:**      Neither admitted nor denied based on a lack of knowledge.  Responding further, Quest denies making any such alleged calls, authorizing others to do so on its behalf, it denies benefitting therefrom, and denies any and all allegations that it provides vehicle warranties.

45.     Upon information and belief, Defendants did not have an internal do not call policy, did not place Plaintiff on an internal do not call policy, in violation of 47 CFR 64.1200(d).

**Response:**     Quest neither admits nor denies the internal do not call policies that may or may not be in place with other Defendants, based on a lack of knowledge.  Quest further denies that there is any applicable legal requirement for it to maintain a do not call policy.   Responding further, Quest does not initiate calls for telemarketing purposes, thus the cited standards do not apply.

46.     Upon information and belief, at all times relevant to the allegations set forth herein, Plaintiff's cell phone number ***-***-5582 has been placed on the state and federal "Do Not Call" Registries. But despite that, the telemarketing calls were placed to Plaintiff by and on behalf all Defendants herein.

**Response:**     With respect to other parties, this allegation is neither admitted nor denied based on a lack of knowledge.  Quest further denies all allegations that it placed the alleged calls, or that calls were placed on its behalf, as untrue.

47.     Upon information and belief, Plaintiff has limited data storage capacity on his cellular telephone.  Incoming calls from the defendants consumed part of this capacity.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

48.     Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent-a "nuisance and invasion of privacy."

**Response:**     Quest neither admits nor denies whether other Defendants harmed Plaintiff as alleged.  Quest denies all express and implied allegations that its conduct, or conduct for which it may  reasonably be held liable, harmed Plaintiff.

49.    Defendants' calls harmed Plaintiff by trespassing upon and interfering with

Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**Response:**    Denied as untrue with respect to Quest.  These allegations are neither admitted nor denied with respect to other Defendants based on a lack of knowledge.

50.    Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

**Response:**    Denied as untrue with respect to Quest.  These allegations are neither admitted nor denied with respect to other Defendants based on a lack of knowledge.

51.    Plaintiff has been harmed, injured, and damages by the unwanted calls

including, but not limited to:

(1)    reduced device storage space;

(2)    reduced data plan usage;

(3)    lost time tending to unwanted calls;

(4)    decreased cell phone battery life and usage as well as the need for more frequent re-charges of the battery;

(5)    decreased enjoyment and usage of Plaintiff's cell phone;

(6)    annoyance;

(7)    frustration, and

(8)    anger.

**Response:**    Plaintiff's damages as alleged herein are neither admitted nor denied based on lack of knowledge.  Responding further, Quest denies all express or implied allegations that it damaged Plaintiff through any unlawful conduct.

14

**Defendants Pelican Investment Holdings Group, LLC a/k/a AAP,
Gus Renny, John/Jane Does 1-5 Knowingly and
Willfully Violated Telemarketing Regulations**

52.     Upon information and belief, defendants Pelican Investment Holdings Group, LLCa/k/a AAP, Gus Renny, and John/Jane Does 1-5 knowingly violated the TCPA by initiating automated calls with pre-recorded messages to Plaintiff.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

53.     Upon information and belief, defendants Pelican Investment Holdings Group, LLCa/k/a AAP, Gus Renny, and John/Jane Does 1-5 did not have a written do-not-call policy while making calls to Plaintiff.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

54.     Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5 did not train their agents engaged intelemarketing on the existence and use of any do-not-call list.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

55.     Upon information and belief, defendants Pelican Investment Holdings Group, LLC a/k/a AAP, Gus Renny, and John/Jane Does 1-5's calls did  not  provide Plaintiff with the name of the individual caller or the name of the person or entity on whose behalfthe call was being made.

**Response:**     Neither admitted nor denied based on a lack of knowledge.

**Plaintiff's cell phone is a residential number**

56.      Upon information and belief, the calls were made to Plaintiff's cellular phone***- ***-5582 which is  Plaintiff's  personal  cell  phone that he uses for  personal, family, and household use. Plaintiff maintains no landline phone at his residents and has not done so for at least 10 years. Thus, he primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Response:**      Neither admitted nor denied based on a lack of knowledge.

**FIRST CLAIM FOR RELIEF**
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(l)(A))**
**(Against All  Defendants)**

57.      Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Response:**      Quest realleges and incorporates by reference all responses set forth herein.

58.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47  U.S.C. § 227(b)(l)(A),  by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent.

16

**Response:**    Quest denies all allegations that it violated the TCPA as untrue.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

59.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

**Response:**    Quest denies all allegations that it violated the TCPA as untrue and denies all claims for damages against it as untrue.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

60.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

**Response:**    Quest denies all allegations that it violated the TCPA as untrue and denies all claims for damages against it as untrue.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

61.    Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**Response:**    Quest does not deny Plaintiff's characterization of part of the relief it seeks, but Quest denies that any such relief should be granted against or with respect to Quest.

**SECOND CLAIM FOR RELIEF**
**(Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))**
**(As Against All Defendants)**

62.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Response:**    Quest realleges and incorporates by reference all responses set forth herein.

63.    The foregoing acts and omissions of Defendants and/or their affiliates or

agents constitute multiple violations of FCC regulations by making telemarketing

solicitations despite lacking:

a      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

b      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. §64.1200(d)(2); and,

c      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).

**Response:**    Quest denies these allegations (and all allegations that it violated the TCPA and/or regulations) as untrue.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

64.    Plaintiff is entitled to an award of at least $500 in damages for each such

violation. 47 U.S.C. § 227(c)(5)(B).

**Response:**    Quest denies these allegations (and all allegations that it violated the TCPA and/or regulations) as untrue.  Quest denies all allegations that Plaintiff is entitled to damages against Quest.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

65.    Plaintiff is entitled to an award of up to $1,500 in damages for each such

knowing or willful violation. 47 U.S.C. § 227(c)(5).

**Response:**    Quest denies these allegations (and all allegations that it violated the TCPA and/or regulations) as untrue.  Quest denies all allegations that Plaintiff is entitled to damages against Quest.  Quest neither admits nor denies said allegations with respect to other Defendants based on a lack of knowledge.

66.     Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

**Response:**   Quest does not deny Plaintiff's characterization of part of the relief it seeks, but Quest denies that any such relief should be granted against or with respect to Quest.

### PRAYER FOR RELIEF

WHEREFORE, Quest seeks dismissal of all allegations against it along with costs and attorney fees incurred as applicable, and denies all of Plaintiff's claims for relief against it. Further, in response to Plaintiff's lettered requests:

A.  Quest has no response to this request for relief but reserves the right to contest any proposed amendment to pleadings by Plaintiff, consistent with the Federal Rules of Civil Procedure;

B.  To the extent applicable, Quest would seek a declaration that it did not violate the TCPA;

C.  Quest has no position with respect to injunctive relief against other Defendants at this time, but denies all Plaintiff's claims to entitlement to injunctive relief against Quest;

D.  Quest has no position with respect to money damages against other Defendants at this time, but denies all Plaintiff's claims to entitlement to money damages against Quest;

E.  Quest has no position with respect to money damages against other Defendants at this time, but denies all Plaintiff's claims to entitlement to money damages against Quest;

F.   Quest has no position with respect to money damages against other Defendants at this time, but denies all Plaintiff's claims to entitlement to money damages against Quest;

G.   Quest also requests further relief as this Court may deem just and equitable under the circumstances.

Respectfully Submitted,

Fraser Trebilcock Davis & Dunlap, PC
Attorneys for Defendant Quest Software Inc.

Date:  March 1, 2022         By: _____
Jared A. Roberts (P55182)
124 W. Allegan St., Suite 1000
Lansing, MI  48933
Phone:  (517) 933-0843
Email:  jroberts@fraserlawfirm.com


## AFFIRMATIVE DEFENSES

Quest asserts and may rely on the following Affirmative Defenses:

### First Affirmative Defense: Consent

1.      The Telephone Consumer Protection Act does not prohibit calls from being made where the party receiving the call has given his or her consent. Quest provides towing dispatch services, pursuant to contract with non-parties such as United Service Protection Corporation (the entity that entered into the contract with Plaintiff), or its administrator, non-party Royal Administration Services, Inc.

2.      Members of programs that have a towing or road service benefit, such as the program Plaintiff allegedly signed up for, make and initiate a call to Quest when they need roadside assistance, towing and the like.  If Quest ever calls that member back, it

20

is with consent of the recipient, who has already called Quest and requested a tow (or related service).

3.      If Quest ever called Plaintiff, it would have been at Plaintiff's request and with Plaintiff's consent, and not in violation of any laws.

**Second Affirmative Defense: Failure to State a Claim**

4.      Plaintiff's claims are barred, in whole or part, because he fails to state a claim upon which relief can be granted against Quest under any theory of action. This defense includes, but is not limited to, Plaintiff's failure to state a claim under the Telephone Consumer Protection Act because Quest did not make or initiate any alleged telephone calls to Plaintiff, because calls to Plaintiff were not made on Quest's behalf or at its direction, and because calls were not made by Quest's agents.

**Third Affirmative Defense: Absence of Actual Damages under the TCPA**

5.      Plaintiff's claims under the Telephone Consumer Protection Act are barred due to an absence of any actual damages, injury, or ascertainable loss as a result of any acts or omissions by Quest. Hence, any statutory damages are an excessive fine and violate Quest's rights under both the Due Process and Takings Clause of the United States Constitution.

**Fourth Affirmative Defense: Failure to Mitigate**

6.      Plaintiff's claims may be barred in whole or in part by his failure to reasonably mitigate his alleged damages. This defense includes, but is not limited to, Plaintiff's potential failure to timely place his cellular telephone number on federal and state "Do Not Call" lists.

**Fifth Affirmative Defense: Acts or Omissions of Others/Lack of Agency**

7.      Plaintiff's damages, if any, were not caused by Quest.  Quest denies ever making the alleged phone calls to Plaintiff. Instead, Plaintiff's purported damages, if any, were caused by others including, the other named Defendant(s) to this action and/or other unnamed third parties.

8.      Quest is not liable for the acts of these Defendant(s) and/or other third parties. Quest received no benefit from these Defendant(s) and/or other third parties. Quest was not responsible for the actions of these Defendant(s) and/or other third parties. Quest exercised no control over these Defendant(s) and/or other third parties. Quest had no ownership over these Defendant(s) and/or other third parties. Quest had no direction over these Defendant(s) and/or other third parties. Quest had no right to such control, ownership, and/or direction of the named Defendant(s) and/or third parties.   Quest had no agency relationship with these Defendant(s) and/or third parties and calls were not made for Quest's benefit or on Quest's behalf.

9.      Thus, recovery, if any, should be from the other named Defendant(s) to this action and/or other third parties who made or benefited from the alleged telephone calls to Plaintiff, not from Quest.

**Sixth Affirmative Defense: Insufficient Process**

10.      Defendant Quest Software, Inc. does not operate under the assumed name of "Quest Towing Services, Inc.," as alleged.   Thus service of process was insufficient regarding any Quest Towing Services entity.

11.     Defendant Quest Software, Inc. does not operate under the assumed name of "Quest Claims Services," as alleged.  Thus service of process was insufficient regarding any Quest Claims Services entity.

Respectfully Submitted,

Fraser Trebilcock Davis & Dunlap, PC
Attorneys for Defendant Quest Software Inc.

Date:  March 1, 2022          By:  _____
                                   Jared A. Roberts (P55182)
                                   124 W. Allegan St., Suite 1000
                                   Lansing, MI  48933
                                   Phone:  (517) 933-0843
                                   Email:  jroberts@fraserlawfirm.com